```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
MAURA E. LYNCH,

                Appellant,           MEMORANDUM & ORDER
                                     18-CV-6893(JS)
        -against-

R. KENNETH BARNARD, STEPHEN S.
VACCARO, and UNITED STATES TRUSTEE,

                Appellees.
----------------------------------x
In re

MAURA E. LYNCH,
                Chapter 7
                                     15-BK-74795 (AST)
                Debtor.
----------------------------------x
```

APPEARANCES
For Appellant:         Maura Lynch, pro se
                       P.O. Box 2340
                       Sag Harbor, New York 11963

For Appellees
Stephen S. Vaccaro:    Lee Jeffrey Mendelson, Esq.
                       P.O. Box 2052
                       Aquebogue, New York 11931

R. Kenneth Barnard:    Robert Kenneth Barnard, Esq.
                       3305 Jerusalem Avenue, Suite 215
                       Wantagh, New York 11793

                       David Blansky, Esq.
                       Gary F. Herbst, Esq.
                       Melanie A. Fitzgerald, Esq.
                       LaMonica Herbst & Maniscalco
                       3305 Jerusalem Avenue
                       Wantagh, New York 11793

United States
Trustee:               Alfred M. Dimino, Esq.
                       Office of the United States Trustee
                       Long Island Federal Courthouse
                       560 Federal Plaza
                       Central Islip, New York 11722

SEYBERT, District Judge:

Currently pending before the Court is an appeal filed by Maura Lynch ("Debtor"), appearing pro se,[1] from an order of the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court"), Judge Alan S. Trust, dated November 19, 2018, denying Debtor's motion for reconsideration of an order granting in part Debtor's applications for Federal Rule of Bankruptcy Procedure 2004 examinations ("Reconsideration Order") in In re Maura E. Lynch, No. 15-BK-74795 (the "Bankruptcy Proceeding"). (Recons. Order, D.E.[2] 1, at ECF pp. 5-16; Bankr. D.E. 788.) For the reasons that follow, the appeal is DISMISSED for lack of jurisdiction.

BACKGROUND

The Court assumes the parties' familiarity with the facts and extensive procedural history of this case. The facts recited here are repeated as necessary for resolution of this appeal.

I. The State Action

The Bankruptcy Proceeding followed a contentious divorce action in New York Supreme Court, County of Suffolk, filed by

---

[1] Although she is currently proceeding pro se, Debtor has been represented by different counsel throughout the Bankruptcy Proceeding.

[2] All references to this Court's docket (No. 18-CV-6893) are preceded by "D.E." All references to the Bankruptcy Court's docket (No. 15-BK-74795) are preceded by "Bankr. D.E."

Stephen S. Vaccaro ("Vaccaro"), Debtor's former husband. (See Vaccaro v. Lynch, New York State, Supreme Court, Index No. 38437-10 (the "State Action").) Vaccaro is a creditor in Debtor's bankruptcy case where many of the proceedings concern disputes arising from their divorce and their monetary and property interests. See Lynch v. Vaccaro, 566 B.R. 290, 292-93 (E.D.N.Y. 2017), aff'd, Frank v. Lynch, 728 F. App'x 71 (2d Cir. 2018). As relevant here, the state court entered various orders including an order, as amended on May 3, 2013, distributing Debtor's and Vaccaro's assets (State Order, Bankr. D.E. 135-2) and another order on May 3, 2013, appointing Vaccaro as temporary receiver of certain properties formerly owned by Debtor and Vaccaro (Receiver Order, Bankr. D.E. 135-4).

II. The Civil Rights Action

On August 7, 2015, Debtor initiated a civil rights action pursuant to 42 U.S.C. § 1983 and New York law against Vaccaro, among others, under the caption Lynch v. Village of Sag Harbor, No. 15-CV-4630 (Donnelly, J.), in the United States District Court for the Eastern District of New York (the "Civil Rights Action"). There, Debtor alleges she was wrongfully evicted from a home previously owned by both Debtor and Vaccaro without proper legal process or justification. Like the Bankruptcy proceeding, the Civil Rights Action heavily implicates the State

3

Action and the distribution of the parties' monetary and property interests. The Civil Rights Action is still pending.

III. The Bankruptcy Proceeding

On November 9, 2015, Debtor filed a voluntary petition in the Bankruptcy Court, seeking bankruptcy relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (See generally Pet., Bankr. D.E. 1.) On June 28, 2017, after many extensions and a failed attempt at mediation, the Bankruptcy Court entered an order converting Debtor's case to Chapter 7 (the "Conversation Order") and appointed R. Kenneth Barnard as the Chapter 7 Trustee (the "Trustee").[3] (See Conversion Order, Bankr. D.E. 457; Trustee App't, Bankr. D.E. 458.)

On December 1, 2017, the Trustee sought an order directing Debtor to turn over certain financial information as necessary to the administration of the estate (the "Turnover Motion"). (Turnover Mot., Bankr. D.E. 553.) The Trustee reasoned that Debtor failed to file tax returns since 2008 and did not cooperate in providing information regarding the Properties. (See generally Turnover Mot.) On December 12, 2017, Debtor requested an adjournment of the Turnover Motion arguing that "she is unable

---

[3] On September 20, 2018, this Court affirmed the Conversion Order. Lynch v. Barnard, 590 B.R. 30, 31 (E.D.N.Y. 2018). On February 18, 2020, the Second Circuit issued a summary order affirming the Court's Order dismissing Debtor's appeal of the Conversion Order. In re Lynch, 795 F. App'x 57 (2d Cir. 2020).

4

to provide the information [the Trustee] requested without first getting information that was requested from others via 2004 examinations."  (Dec. 12, 2017 Letter, Bankr. D.E. 564, at 2.)  On January 19, 2018, the Bankruptcy Court issued an order granting the Turnover Motion (the "Turnover Order").  (Turnover Order, Bankr. D.E. 591.)

A.  Debtor's Bankruptcy Rule 2004 Applications

On January 8, 2016, while represented by counsel, Debtor filed an application pursuant to Federal Rule of Bankruptcy Procedure 2004[4] ("Rule 2004") requesting authorization to issue subpoenas to Vaccaro for the production of documents and for an oral examination to "adequately investigate the financial affairs of Vaccaro relative to property of the bankruptcy estate" (the "Vaccaro 2004 Application").  (Vaccaro 2004 App., Bankr. D.E. 69, ¶ 4.)  Specifically, Debtor stated "it is necessary to effectuate a turnover of all documents relating to and pertaining to the financial condition of Vaccaro, [Appetizing d/b/a Twice Upon on a Bagel ("Appetizing")], and Ivy Realty, LLC ("Ivy"), which may

---

[4] Federal Rule of Bankruptcy Procedure 2004 "allows the court, on motion of any party in interest, to order the examination of any entity if such examination relates to the acts, conduct, or property or to the liabilities and financial condition of the debtor's estate.  Indeed, the scope of this examination is broader than discovery permitted under the Federal Rules of Civil Procedure."  In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005) (internal quotation marks, citation, and ellipsis omitted).

5

reflect, among other things, transfers of property of the estate to Vaccaro, revenues generated by estate property not accounted for and/or improperly retained by Vaccaro, and estate properties misused and mismanaged by Vaccaro while appointed receiver over marital properties."[5] (Vaccaro 2004 App. ¶ 7.) On January 12, 2016, the Bankruptcy Court entered its standard <u>ex parte</u> order granting the Vaccaro 2004 Application subject to Vaccaro's right to move to quash. (Jan. 12, 2016 Order, Bankr. D.E. 74.)

By subpoena dated February 16, 2016, Debtor noticed Vaccaro for an oral examination (Vaccaro Subpoena, Bankr. D.E. 135-10) and requested that Vaccaro produce documents responsive to 50 different categories (Vaccaro Subpoena, Schedule A, at ECF pp. 5-11). By letter dated March 8, 2016, Debtor served an addendum that sought ten additional categories of documents. (<u>See</u>, Mot. to Quash, Bankr. D.E. 135-1, ¶ 51; Addendum to Schedule A, Bankr. D.E. 135-11.) On March 18, 2016, Vaccaro filed a motion to quash the Rule 2004 subpoena. (Notice of Mot. Quash, Bankr. D.E. 135.) On September 14, 2016, the Bankruptcy Court held a hearing to discuss the motion. Thereafter, the Bankruptcy Court adjourned the hearings from December 7, 2016, February 15, 2017,

---

[5] Debtor's interests in Appetizing and Ivy were transferred to Vaccaro by order of the state court. (Schedules, Bankr. D.E. 19, at ECF p. 8.)

6

March 22, 2017, to June 28, 2017 when the Bankruptcy Court adjourned the motion to quash sine die with leave to renew.

On July 8, 2016, while represented by counsel, Debtor filed an application for a Rule 2004 examination of Appetizing and Ivy (the "Entities") (the "Entities 2004 Application"). (Entities 2004 App., Bankr. D.E. 247.) On July 16, 2016, the Bankruptcy Court entered its standard ex parte order granting the application subject to the Entities' rights to move to quash any subsequently issued subpoena. (July 16, 2016 Order, Bankr. D.E. 255.)

By letter dated January 10, 2018, after the Trustee filed the Turnover Motion, Debtor, acting pro se, filed a renewed request for Rule 2004 examinations of Vaccaro and the Entities (the "Renewed 2004 Application"). (Renewed 2004 App., Bankr. D.E. 585.) On January 31, 2018, Vaccaro renewed his motion to quash. (Vaccaro Suppl. Affirmation, Bankr. D.E. 606.)

    B.   The Bankruptcy Rule 2004 Order

On February 23, 2018, the Bankruptcy Court issued an order granting, in part, Debtor's Renewed 2004 Application and denying, in part, Vaccaro's renewed motion to quash (the "2004 Order"). (2004 Order, Bankr. D.E. 613.) The Bankruptcy Court ordered Vaccaro and the Entities to produce documents regarding the Properties. (2004 Order at 14.) The Bankruptcy Court further ordered the Entities to produce federal and state tax returns from 2009 through 2013. (2004 Order at 14.) Finally, the Bankruptcy

7

Court ordered Vaccaro to produce various documents responsive to seven broad categories of documents. (2004 Order at 14.)

The Bankruptcy Court denied Debtor's request for Vaccaro's personal financial information finding that it "was the subject of the Divorce Action, in which the State Court administered the marital assets including the Properties and the Entities, oversaw the appointment of Vaccaro as receiver and eventually vacated the order appointing Vaccaro as receiver." (2004 Order at 12.) Further, the Bankruptcy Court recognized that the state court denied Debtor's request for an accounting in an April 1, 2015 order and therefore found Vaccaro's alleged misconduct "already addressed." (2004 Order at 12.) The Bankruptcy Court did not, however, "preclude Debtor from obtaining certain documents from Vaccaro related to the Properties, even if created while he was receiver." (2004 Order at 12-13.) The Bankruptcy Court also denied Debtor's request for information related to the Civil Rights Action because the Trustee abandoned the estate's interest in the Civil Rights Action and "the proper forum for Debtor to seek information related to the Civil Rights Action is in the court" overseeing that action and not the Bankruptcy Court. (2004 Order at 13.)

The Bankruptcy Court further denied the Renewed 2004 Application to the extent it sought oral examinations "given the high level of acrimony between Debtor and Vaccaro" and because the

information Debtor needed to comply with the Turnover Order should be contained in documents. (2004 Order at 13.) The Bankruptcy Court opined that oral examinations "would not benefit the administration of this estate or advance the just, speedy and inexpensive determination of the issues presented, but could instead foment additional litigation over the conduct of the examinations." (2004 Order at 13 (citing Bankruptcy Rule 1001).)

    C.   <u>The Bankruptcy Court's Reconsideration Order</u>

On March 12, 2018, Debtor, appearing <u>pro se</u>, filed a motion seeking reconsideration and/or re-argument of the 2004 Order (the "Reconsideration Motion"). (Recons. Mot., Bankr. D.E. 628.) In support, Debtor argued her "right to conduct a 2004 examination of Vaccaro regarding his filings and representations that significantly affected the administration of the case, its assets, and liabilities." (Recons. Mot. at 8.) Specifically, Debtor argued, among other things, that she was "actually deprived from acting as debtor in possession" during the Chapter 11 phase due to unspecified "frauds that Vaccaro perpetrated in this case." (Recons. Mot. at 12.) Debtor also argued that her prior counsel consented to various adjournments "over her vehement objections" (Recons. Mot. at 13) and negotiated a "terrible deal," <u>i.e.</u>, the settlement she was "forced into" and withdrew. (Recons. Mot. at 13.) Debtor also argued that she was entitled to documents and an oral examination of Vaccaro in connection to his claims against

9

the estate, which were filed after Rule 2004 examination requests. Further, Debtor argued that she "had not been able to file her personal tax returns for any years after 2008 due to Vaccaro withholding information" and that her request for a 2004 oral examination is necessary "to get these records." (Recons. Mot. at 8 n.12.)

As for the Entities 2004 Application, Debtor argued that several, but not all, tax returns were provided and that she could not comply with the Turnover Order until there is full compliance with the 2004 Order. (Recons. Mot. at 9-11.) Debtor argued that certain tax returns were withheld by a bookkeeper "who had not been paid" and was "still in the employ of one of the principals of the Entities," and that "potential fabrication [was] being used to avoid, evade and delay the production of the information requested." (Recons. Mot. at 9.) Moreover, Debtor argued that a review of the tax returns produced revealed "potentially fraudulent reporting." (Recons. Mot. at 9.) Debtor also faults the Trustee for "refus[ing] to take any measures to compel the production of the outstanding discovery requests" from the Entities. (Recons. Mot. at 9-10.)

Finally, Debtor argued that the Bankruptcy Court committed "mistake of fact." (Recons. Mot. at 17-20.) Specifically, Debtor argued that (1) the State Order was a decision, and not a judgment, and therefore Debtor's interests in

10

the assets awarded to Vaccaro were effective on July 16, 2013, the date of the divorce judgment (Recons. Mot. at 17, ¶ 1); (2) the State Action did not address Debtor's interest in Ivy (Recons. Mot. at 17, ¶ 2); (3) the state court did not enter an order appointing Vaccaro as receiver but only indicated it would (Recons. Mot. at 18, ¶ 3); and (4) the April 1, 2015 Order appointing O'Brien as receiver was "void" because it was entered in violation of a stay (Recons. Mot. at 18-19, ¶ 4).

On November 19, 2018, the Bankruptcy Court denied reconsideration of the 2004 Order under Federal Rules of Civil Procedure 59(e) and 60(b) as incorporated by Bankruptcy Rules 9023 and 9024. (See Recons. Order, Bankr. D.E. 788). First, the Bankruptcy Court found reconsideration was not appropriate under Federal Rule of Civil Procedure 59(e) because Debtor did not point to any "facts or case law which were overlooked" instead finding that Debtor sought "a 'do-over' of the Renewed 2004 Application." (Recons. Order at 8.) The court then rejected Debtor's argument that the Bankruptcy Court overlooked allegations regarding Vaccaro's actions and representations in connection with the appointment of a receiver as "addressed by prior orders." (Recons. Order at 8.) The Bankruptcy Court similarly rejected Debtor's assertions that Vaccaro's conduct caused the Court to improperly enter the Conversion Order as a "disguised attempt to relitigate

11

the Conversion Order," which was appealed and affirmed. (Recons. Order at 8-9.)

Second, the Bankruptcy Court denied reconsideration under Federal Rule of Evidence 60(b) and found that Debtor did not provide the Court with a mistake in law or fact regarding the calculation of time that Debtor's case was in its chapter 11 phase. (Recons. Order at 10.) Further, Debtor did not present the court with a mistake in law or fact to negate the Bankruptcy Court's interpretation of certain State Action orders. (Recons. Order at 10.) The court also denied Debtor's motion to the extent she argued that her prior counsel prevented her from pursuing Rule 2004 examinations. (Recons. Order at 10.) Finally, the court determined that Debtor failed to prove that Vaccaro's pre- and post-petition actions constituted "fraud, misrepresentation, or misconduct" by clear and convincing evidence. (Recons. Order at 11.) This appeal followed.

## DISCUSSION

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from final orders of a bankruptcy court. See 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . and, with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges."). An appeal must be dismissed where the district court

12

lacks jurisdiction under Sections 158(a)(1) or (a)(3). See In re China Med. Techs., Inc., No. 13-CV-6222, 2013 WL 6667789, at *4 (S.D.N.Y. Dec. 17, 2013) (citing In re Quigley Co., Inc., 323 B.R. 70, 73 (S.D.N.Y.2005); In re Prudential Lines, Inc., 59 F.3d 327, 331 (2d Cir. 1995)).

Under 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a), final orders of a bankruptcy court may be appealed as of right. A "bankruptcy court's order is 'final' if it completely resolves all of the issues pertaining to a discrete claim, including issues as to the proper relief." Hongkong & Shanghai Banking Corp. Ltd. v. Brandt for CFG Peru Invs. Pte. Ltd. (Singapore), No. 17-CV-6672, 2017 WL 6729191, at *2 (S.D.N.Y. Dec. 29, 2017) (quoting In re Adelphia Commc'ns Corp., 333 B.R. 649, 656 (S.D.N.Y. 2005)). "Because bankruptcy proceedings can persist for years, the Second Circuit has determined that the intent of the governing statute is to allow for immediate appeal from bankruptcy court orders that 'finally dispose of discrete disputes within the larger case.'" Id. (quoting In re Fugazy Exp., Inc., 982 F.2d 769, 775 (2d Cir. 1992)). A "'dispute, for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted.'" Id. (quoting Fugazy, 982 F.2d at 775-76).

The parties do not explicitly address whether the Court has jurisdiction over all or part of this appeal.[6] As noted by the Bankruptcy Court, "[s]everal courts have found that bankruptcy court orders in regards to discovery, including Rule 2004 orders, are not final orders for purposes of appeals to district court." (Recons. Order at 9 n.10.) The Court agrees and the Court lacks jurisdiction to consider this appeal to the extent it challenges the 2004 Order. See Lothian Oil (USA), Inc. v. Sokol, 526 F. App'x 105, 108 (2d Cir. 2013) ("discovery orders are non-appealable interlocutory orders") (citing Baker v. F & F Inv., 470 F.2d 778, 780 n.3 (2d Cir. 1972)); In re Chateaugay, 120 B.R. 707 (S.D.N.Y. 1990) (bankruptcy court's order denying application for 2004

---

[6] In reply, however, Debtor argues that the Court should invoke the collateral order doctrine because "if Debtor is deprived of the right to conduct discovery and examination of Vaccaro while the case continues to proceed, it removes her rights and ability to present a fair defense of the issues being heard." (Debtor Reply, D.E. 10, at 11-12.) "The collateral order doctrine requires, inter alia, that an order be effectively otherwise unreviewable." Hongkong, 2017 WL 6729191, at *3 (citation omitted). The Second Circuit has stated that "'[m]ost orders granting discovery are not final decisions because they are effectively reviewable on appeal from a final judgment, . . . or by an appeal from a contempt citation after the target of a subpoena resists the challenged order.'" Id. (quoting Em Ltd. v. Rep. of Arg., 695 F.3d 201, 206 (2d Cir. 2012) (ellipsis in original)). Thus, Debtor "appears to have two vehicles available to challenge a discovery order: 'comply with the order and challenge it at the conclusion of the discrete dispute or refuse to comply and contest the order's validity when held in contempt for the refusal.'" Id. (quoting In re Royce, 466 B.R. 81, 89 (S.D. Tex. 2012) (collecting cases)) (alterations omitted). Therefore, the collateral order doctrine is inapplicable.

14

examination was an interlocutory order); Hongkong, 2017 WL 6729191, at *2 (noting that courts routinely find that "bankruptcy court orders granting or denying discovery, including orders related to Rule 2004 discovery, are not final for the purposes of an appeal to a district court.") (collecting cases); Aetna Cas. & Sur. Co. v. Glinka, 154 B.R. 862, 866-67 (D. Vt. 1993).

Where, as here, the Court lacks "jurisdiction to review an interlocutory order of the [bankruptcy] court, [it] generally will also lack jurisdiction to review a subsequent interlocutory order denying reconsideration of that order." Lauro v. Comm'r of Soc. Sec., 644 F. App'x 88, 89 (2d Cir. 2016) (citing Petrello v. White, 533 F.3d 110, 114 (2d Cir. 2008)). The 2004 Order is interlocutory and non-appealable and thus "the denial of a motion that seeks reconsideration of the [2004 Order] is likewise not appealable under Petrello." Id.; Prince v. Ethiopian Airlines, 646 F. App'x 45, 47 (2d Cir. 2016) ("Because the [original] opinion was not a 'final decision,' neither was the [ ] order denying reconsideration of that decision."); Murphy v. City of Stamford, 634 F. App'x 804, 805 (2d Cir. 2015) (same). Accordingly, the Court lacks jurisdiction to review the Reconsideration Order.

Given Debtor's pro se status, the Court considers whether the Reconsideration Order warrants interlocutory review. The Court may hear appeals of non-final orders from bankruptcy courts as a matter of discretion pursuant to 28 U.S.C. § 158(a)(3).

15

See In re Kassover, 343 F.3d 91, 94 (2d Cir. 2003). When deciding to hear a non-final order, the Court analyzes "'whether: (1) such order involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation;' all three criteria must be met." Hongkong, 2017 WL 6729191, at *4). "'The Second Circuit cautions that in applying these criteria, only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of judgment.'" Id. (quoting Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 987 F. Supp. 2d 309, 311 (S.D.N.Y. 2013)). Indeed, "interlocutory appeal is 'a rare exception to the final judgment rule that generally prohibits piecemeal appeals.'" Id. (quoting Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996)).

Here, there are "no circumstances, exceptional or otherwise, sufficient to justify exercise of this Court's discretion to permit an interlocutory appeal." In re China Med., 2013 WL 6667789, at *10. The issues before the Court do not present any controlling questions of law. See id. Indeed, "[q]uestions that arise during the course of a bankruptcy proceeding concerning the appropriate scope of discovery and that do not involve controlling questions of law are left to the sound discretion of the court that is fully familiar with the entire

16

proceeding—the bankruptcy judge." In re Towers Fin. Corp., 164 B.R. 719, 721 (S.D.N.Y. 1994). Moreover, and importantly, the appeal would not advance the ultimate termination of the Bankruptcy Proceeding when considering the tortured and contentious nature of the Bankruptcy Proceeding, the State Action, and the Civil Rights Action. "[R]equiring this Court to review the bankruptcy court's order would be intensive and time-consuming, generating an unnecessary roadblock for the bankruptcy proceedings." Hongkong, 2017 WL 6729191, at *6. "In light of the role of Rule 2004 examinations in pre-litigation discovery, the current appeal, if permitted, would prolong rather than hasten the termination of the litigation." Id. (internal citation and quotation marks omitted). Therefore, leave to file an interlocutory appeal is DENIED.

## CONCLUSION

Accordingly, leave to file an interlocutory appeal is DENIED and Debtor's appeal is DISMISSED for lack of jurisdiction. Defendants are directed to confer and provide pro se Debtor with a copy of this Memorandum and Order and file proof of service on ECF within thirty (30) days of the date of this Order. The Clerk of the Court is directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.

Dated: April  9 , 2020
Central Islip, New York